UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

BUILDING CONSTRUCTION
ENTERPRISES, INC.                                       PLAINTIFF/COUNTERDEFENDANT

v.                                   CASE NO. 3:06-CV-00092 GTE

GARY MEADOWS
CONSTRUCTION CO., INC.                                  DEFENDANT/COUNTERCLAIMANT

**ORDER**

Presently before the Court are Plaintiff Building Construction Enterprises, Inc.'s ("BCE") Motion in Limine to Exclude Parole Evidence (Docket No. 42), and BCE's Motion in Limine to Exclude Hearsay Evidence (Docket No. 44).

**I. Background**

This case involves a dispute over work contemplated to be performed at the Arkansas State University student center. BCE was the general contractor and Defendant Meadows was a subcontractor on the project. The Complaint states that on or about July 17, 2001, the parties entered into a contract. In March of 2005, a dispute arose between the parties regarding the scope of work to be completed by Defendant.

The Complaint alleges that BCE took the position during the work that fill and backfill were included in the work Meadows was obligated to do under contract, but that Meadows took the position that it was not responsible for fill and backfill. BCE alleges that it contacted Meadows and asserted that Meadows had separately charged them for backfill work that was within the scope of the original contract between the parties. BCE also alleges that it informed

1

Meadows that if Meadows did not fulfill its obligations under the contract, BCE would be forced to hire others to do the work, and that Meadows abandoned the job due to the controversy. Subsequently, BCE contracted with other construction companies to complete the work.

In its Answer, Defendant Meadows asserts that it did not enter into a contract with Plaintiff BCE for performance of Excavation, Section 02316, or Fill and Backfill, Section 02375, of Plaintiff's contract with ASU.  Defendant further states that its proposal did not include those two items, and it was not the intent of Defendant or Plaintiff for the subcontract to include those two items.  Defendant asserts that several months after entering into the contract, Plaintiff asked Defendant to submit a proposal for the excavation Section of Plaintiff's contract with ASU and that a proposal was submitted by it on October 15, 2001, in the amount of $64,600.00. Defendant states that Plaintiff declined to accept said proposal and informed Defendant that it would use its own forces to complete that portion of the job.  However, from October 6, 2001, through November 3, 2004, Defendant was asked by Plaintiff to perform extra work consisting of excavation, fill, and backfill.  Defendant states that it submitted invoices for the extra work during that three-year period of time and that Plaintiff paid Defendant for that extra work as billed.

Defendant further states that it was only in March, 2005, when a different job superintendent of Plaintiff came on the job, that Plaintiff took the position that the excavation, fill, and backfill were included in Defendant's original subcontract agreement.  Defendant states that beginning in March 2005, Plaintiff refused to pay Defendant for the extra work, and that Plaintiff refused to meet with Defendant to attempt to resolve the situation, and that Plaintiff ceased paying Defendant for work already completed that it contends was extra work outside the

subcontract agreement. Defendant alleges that Plaintiff breached its contract with Defendant by refusing to pay for charges incurred that were submitted and authorized by Plaintiff's personnel on the job and by refusing to fulfill its obligations under the subcontract agreement and its agreement for the payment for the extra work performed.

Defendant counterclaims alleging that Plaintiff is indebted to Defendant in the amount of $5,017.51 for invoiced and billed amounts pursuant to the original subcontract agreement for which Plaintiff has refused to pay, and in the amount of $24,462.76 for the ten percent retainage held by Plaintiff for work performed by Defendant pursuant to the subcontract. Defendant also asserts that it performed extra work at the request of Plaintiff for which it submitted invoices to Plaintiff which remain unpaid in the sum of $51,499.66.

**II. Plaintiff's Motion in Limine to Exclude Parole Evidence (Docket No. 42)**

Plaintiff moves this Court to exclude any and all alleged evidence proffered or offered by the Defendant in this matter designed to explain and/or change the contract terms between the parties. Plaintiff states that it anticipates that Defendant intends to introduce evidence, including, but not limited to, proposals and bids allegedly submitted to Plaintiff by the Defendant, in an attempt to explain and/or interpret the terms of the contract between the parties. Plaintiff further states that the contract between the parties is signed by the Defendant's agent, contains terms that are specific in nature and whose definition are not in dispute, and speaks for itself. Specifically, paragraph 4 of Attachment A to the contract states,

> This Subcontract includes Site Demolition, Earthwork, Paving, and Pavement
> Trench Repair for Utilities, as specified in Section 02200 – Demolition and Site
> Preparation, Section 02310 – Earthwork, Section 02315 – Excavation, Section
> 02316 – Fill and Backfill, Section 02375 – Temporary Erosion Control, Section

02721 – Bituminous Concrete Paving, and Section 03300 – Cast in Place Concrete.

Defendant responds by stating that paragraph 5 of Attachment "A" to the contract and also the references to sections in paragraph 4 of Attachment "A" to the contract are ambiguous as to what work was covered. Defendant states that it will introduce evidence to explain and interpret the terms of the contract as it was interpreted and relied upon by the parties for over three years after it was entered into. Defendant also states that the parties were agreeable and consistent in their interpretation of the contract for over three years and it was not until March 2005 that Plaintiff's new job superintendent interpreted the contract in a different manner.

Defendant argues that if there is a contradiction between general provisions, and more detailed, specific provisions in the contract, the specific provisions qualify the meaning of the general provisions. *See Missouri Pac. R. Co. v. Winburn Tile Mfg. Co.*, 461 F.2d 984 (8th Cir. 1972). Essentially, Defendant argues that paragraph 4, the general provision, is qualified by paragraph 5, the specific provision. Defendant states that paragraph 5 of Attachment "A" to the subcontract agreement specifically sets forth the items of work that Meadows was to do pursuant to the subcontract, and mirrors the items as set forth in Meadows' proposal to the Plaintiff dated May 9, 2001.

Paragraph 5 states:

This Subcontract specifically [includes], but is not limited, to the following:

    Site Demolition
    a.    Exterior demolition only
    b.    Trees
    c.    Curb and gutter
    d.    Asphalt paving
    e.    Sidewalks

    f. Concrete canopy and columns
    g. Brick retaining walls
    h. Light Poles and bases
    i. Traffic signal poles and bases
    j. Storm inlets
    k. Remove and cap tunnel
    l. Utility vaults and manholes

    Earthwork
    a. Strip and stockpile topsoil
    b. Cut and fill
    c. Final grading plus or minus 0.10" (ready for landscape contractor)
    d. Excludes 4" drainage fill under slab

    Storm Drainage (RGB Mechanical will perform this work)

    Paving
    a. Curb and gutter
    b. Asphalt paving, base and repair at new curb

    Pavement Trench Repair for Utilities
    a. Trench backfilled by utility contractor (RGB Mechanical)
    b. 6" concrete plus 2" asphalt

  3. This Subcontract does not include the following:
    a. Engineering, layout and testing
    b. Undercut if necessary will be charged extra

After review of the proposal dated May 9, 2001, the Court notes that the proposal and paragraph 5 of the subcontract essentially differ only with regard to the Storm Drainage and the Pavement Trench Repair for Utilities paragraphs. The Court also notes that the categories of work to be included in the subcontract are listed in paragraph 4 as "Site Demolition, Earthwork, Paving, and Pavement Trench Repair for Utilities," which mirrors the general categories set forth in the proposal. Additionally, as Defendant notes, the subcontract amount of $232,440.00 is equal to

5

the amounts proposed on May 9, 2001, not including those portions of the work with "RBG Mechanical" listed.[1]

Defendant also states that in October of 2001, several months after the contract was entered into, Plaintiff requested that Meadows submit a proposal for work involving excavation and backfill. Defendant Meadows states that it submitted a proposal dated October 15, 2001, but its proposal was not accepted by Plaintiff BCE. Defendant Meadows further states that from October 6, 2001, through November 3, 2004, it was specifically asked by Plaintiff's job superintendents to perform "extra work" consisting of excavation, fill and backfill for Plaintiff, submitted invoices for the "extra work," and received payment from Plaintiff in the amount of $101,945.94 for that "extra work" separate and apart from the work done pursuant to the subcontract.

"Under Arkansas law, the determination whether a contract is ambiguous is a question of law." *Jet Asphalt & Rock Co., Inc. v. Angelo Iafrate Const., LLC*, 431 F.3d 613, 616 (8th Cir. 2005) (citing *Pittman v. Pittman,* 84 Ark. App. 293, 139 S.W.3d 134, 136-37 (2003)). "Unambiguous contracts are construed as a matter of law, while the meanings of ambiguous contracts are determined by the finder of fact." *Id.* In *First Nat. Bank of Crossett v. Griffin,* 310 Ark. 164, 168-69, 832 S.W.2d 816, 818-19 (1992), the Arkansas Supreme Court explained:

> The parol evidence rule prohibits introduction of extrinsic evidence, parol or otherwise, which is offered to vary the terms of a written agreement. It is a substantive rule of law rather than a rule of evidence. Its premise is that the written agreement itself is the best evidence of the intention of the parties. In *Farmers Coop. Ass'n v. Garrison,* 248 Ark. 948, 952, 454 S.W.2d 644, 646 (1970), we said: "It is a general proposition of the common law that in the absence

---

[1] The sum of $86,220.00 (site demolition), $123,700.00 (earthwork), 9,920.00 (curb and gutter), and $12,600.00 (asphalt paving, base & repair @ new curb) is $232,440.00.

of fraud, accident or mistake, a written contract merges, and thereby extinguishes, all prior and contemporaneous negotiations, understandings and verbal agreements on the same subject." On the other hand, the parol evidence rule does not prohibit the introduction of extrinsic evidence where it would aid the court in interpreting the meaning of particular language of a contract, such as when the contract contains terms of art or words which have acquired their meaning through a course of dealing or custom or usage. *Les-Bil, Inc. v. General Waterworks Corp.,* 256 Ark. 905, 511 S.W.2d 166 (1974). Nor does the parol evidence rule prohibit the court's acquainting itself with the circumstances surrounding the making of the contract. *Stokes v. Roberts,* 289 Ark. 319, 711 S.W.2d 757 (1986); *Schnitt v. McKellar,* 244 Ark. 377, 427 S.W.2d 202 (1968). The initial determination of the existence of ambiguity rests with the court and, if the writing contains a term which is ambiguous, parol evidence is admissible and the meaning of the ambiguous term becomes a question of fact for the factfinder. *C & A Constr. Co., Inc. v. Benning Constr. Co.,* 256 Ark. 621, 509 S.W.2d 302 (1974).

Therefore, if the contract is ambiguous, "parol evidence of conversations and negotiations leading up to the execution of [the] contract, as well as the relation of the parties thereto and the attendant circumstances to explain and aid in the interpretation of uncertainties and ambiguities contained in the writing, may be admitted." *Jefferson Square, Inc. v. Hart Shoes, Inc.*, 239 Ark. 129, 134, 388 S.W.2d 902, 904-05 (1965) (quoting *Arkansas Amusement Corporation v. Kempner*, 182 Ark. 897, 33 S.W.2d 42 (1930)).

Also, under Arkansas law, "it is a well-established principle of law that, in the interpretation or construction of contracts, the construction the parties themselves have placed on the contract is entitled to great weight, and will generally be adopted by the courts in giving effect to its provisions.  This is especially true in case of ambiguity in the written contract." *National Equity Life Ins. Co. v. Bourland*, 179 Ark. 398, 16 S.W.2d 6, 7 (1929)(citing *Temple Cotton Oil Co. v. Southern Cotton Oil Co*., 176 Ark. 601, 3 S.W.2d 673 (1928); *Webster v. Telle*, 176 Ark. 1149, 6 S.W.2d 28 (1928)).  *See also RAD-Razorback Ltd. Partnership v. B.G. Coney*

*Co.*, 289 Ark. 550, 555, 713 S.W.2d 462, 466 (1986) ("Where a contract is ambiguous, the court will accord considerable weight to the construction the parties themselves give to it, evidenced by subsequent statements, acts and conduct.")

As noted above, the parol evidence rule excludes evidence of **prior** negotiations and transactions, but has no application to subsequent agreements. Evidence of subsequent modifications may be shown even if it contradicts the original agreement. Thus, the question before the Court is whether the proposal dated May 9, 2001, and evidence of negotiations prior to the subcontract date should be considered by the Court.

After careful consideration of the issues before the Court, the Court finds that Plaintiff's motion should be denied, as the subcontract language is ambiguous. Therefore, parol evidence of conversations and negotiations leading up to the execution of the contract, as well as the relation of the parties thereto and the attendant circumstances to explain and aid in the interpretation of uncertainties and ambiguities contained in the writing, may be admitted.

**III. Plaintiff BCE's Motion in Limine to Exclude Hearsay Evidence (Docket No. 44)**

Plaintiff moves this Court for an order excluding testimony by the Defendant regarding conversations between Defendant and Plaintiff's superintendents employed by the Plaintiff. Defendant responds by stating that statements made by BCE's superintendents while on the job and supervising the work of BCE at the ASU Student Center are not hearsay. Federal Rule of Evidence 801(d) provides that this statement is not hearsay because it is "a statement by a person authorized by the party to make a statement concerning the subject," and is "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made

during the existence of the relationship. Fed. R. Evid. 801(d)(2)(C), (D). Plaintiff states that the on-site job superintendents do not have the authority to modify a written contract. The Court declines to exclude the proffered evidence solely upon Plaintiff's blanket assertion that the on-site job superintendents did not have authority to modify the subcontract, as Plaintiff has submitted no proof of the authority of these individuals. Plaintiff's motion is denied without prejudice.

Accordingly,

IT IS THEREFORE ORDERED that Plaintiff's Motion in Limine to Exclude Parole Evidence (Docket No. 42) be, and it is hereby, DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion in Limine to Exclude Hearsay Evidence (Docket No. 44), be and it is hereby DENIED without prejudice.

Dated this 10th day of September, 2007.

/s/Garnett Thomas Eisele
UNITED STATES DISTRICT JUDGE